UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Paul L. Murphy,            :
     Plaintiff,        :
                           :
  v.                       :    File No. 1:04-CV-71
                           :
Correctional Medical       :
Services, Cathy Bean,      :
Nurse Jim, Dr. Kozub,      :
Dr. Kutler, Nurse Lena,    :
Nurse Patty, Nurse         :
Manager Sharon, Dr. Birge, :
     Defendants.       :

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
(Papers 80, 84 and 85)

Plaintiff Paul Murphy, a Vermont inmate proceeding *pro se*, brings this action claiming that he has not received adequate medical care while in prison. In his initial complaint, Murphy alleges that he was deprived of his inhaler, that hand x-rays and a blood draw had been prescribed but not performed, and that he had suffered a seizure as a direct result of the fact that his blood levels were not being monitored. (Paper 6). Murphy subsequently amended his complaint to add allegations regarding an eye injury, a hernia, and additional facts about his hand injury. (Paper 10). Murphy explained in his amended complaint that the eye injury is not expected

to result in a loss of vision, and that surgery was eventually performed on his hernia.  Subsequent amendments to the complaint have not added any new factual claims.  (Papers 65 and 71).[1]

Currently pending before the Court is the defendants' motion for summary judgment.  (Paper 80).  The defendants claim that Murphy has litigated his eye and hernia claims in state court, that those claims have been dismissed with prejudice, and that because the claims pending in this Court either have been raised or could have been raised in the state court actions, his current claims are barred by *res judicata*.  Murphy has opposed the motion for summary judgment, stating that he did not understand the consequences of the state court dismissals, and that some of his claims are factually distinct from those raised in state court.[2]  (Paper 84).  Murphy has also requested a summary judgment hearing.  (Paper 85).  For the reasons set forth below, I recommend that the defendants' motion for summary judgment be

---

[1] These amendments added defendants and additional legal claims.

[2] Although it appears to be solely an opposition memorandum, Murphy's opposition is entitled "Plaintiffs Motion for Summary Judgment."

DENIED.  Murphy's motion for a hearing is also DENIED.

<u>Factual Background</u>

In his initial complaint, Murphy claims that medical personnel deprived him of his inhaler for a period of 18 days.  (Paper 6).  Specifically, Murphy claims that on February 27, 2004 he alerted "Nurse Jim" that his inhaler was empty and that he needed a new one.  On March 12, 2004, Murphy had not yet received the new inhaler and allegedly suffered an asthma attack.  Murphy received a new inhaler on March 17, 2004.  <u>Id.</u>

The initial complaint also includes an allegation that "there have been orders for blood to be drawn that was never done."  Murphy claims that due to the failure to monitor his blood levels, he suffered a seizure on March 18, 2004.  Finally, Murphy claims that "x-rays for my hand were never done," but does not explain why such x-rays would be required.  <u>Id.</u>

Six days after filing his initial complaint, Murphy moved to file an amended complaint.  (Paper 7).  The amended complaint included claims of inadequate medical care with respect to eye and hand injuries, as well as inadequate treatment of a hernia.  (Papers 7 and 10).

The eye injury was suffered when Ajax cleaning powder accidently entered Murphy's left eye. Two days later, CMS staff allegedly diagnosed the injury as "pink eye." A specialist at Fletcher Allen Medical Center subsequently diagnosed the problem as a burn to the eye. The specialist informed Murphy that the eye was healing and that he should not expect any loss of vision.

Murphy's hand injury came after he punched the door of his cell on April 3, 2004. Murphy sought medical attention, but was allegedly told that nothing could be done until the swelling went down. Murphy claims that CMS staff was negligent in not obtaining x-rays immediately.

With respect to the hernia claim, Murphy states that he first noticed a "bulge" in his stomach on September 20, 2003. He suffered pain in that area through the rest of 2003, and his grievances for treatment allegedly went unanswered. Murphy received surgery for his hernia on January 13, 2004.

The defendants have now moved for summary judgment on the ground that Murphy's claims are barred by *res judicata*. (Paper 80). The defendants' motion is based

upon the fact that Murphy has filed prior actions in Vermont state courts, some of which sought relief for the same injuries he alleges in this case.  On March 25, 2004, approximately one week before he filed his initial complaint in this Court, Murphy commenced an action in Franklin County Superior Court against defendants Kozub and Correctional Medical Services ("CMS").  In his state court complaint, Murphy made claims of improper medical treatment with respect to his eye injury.  (Paper 81, Ex. A and B).  Murphy subsequently moved to dismiss the case, and on April 29, 2004 his complaint was dismissed with prejudice.  Id., Ex. D.  Approximately one month later, on May 27, 2004, Murphy moved to reopen the state court case, but his motion was denied.  Id., Ex. E.

On October 4, 2004, Murphy filed suit in Windsor County Superior Court against Dr. Kutler and CMS, as well as the "Northwest Correctional Facility."  In this complaint, Murphy again alleged that he received improper treatment with respect to his eye injury.  Murphy subsequently amended his complaint in an undated filing, naming Dr. Kutler, Dr. Kozub, Nurse Manager Sharon and CMS as defendants.  Id., Ex. G.  The suit was dismissed

initially on Murphy's own motion on February 11, 2005. After the defendants filed an objection, the dismissal was entered with prejudice on February 18, 2005.  Id., Ex. H.

On December 22, 2004, Murphy filed a second lawsuit in Windsor County Superior Court, this time with respect to his hernia claim.  Id., Ex. I.  The sole defendant in that case was CMS.  Murphy filed a similar complaint in the same case on February 15, 2005, again naming CMS as the defendant.  Id., Ex. J.

On June 9, 2005, the state court dismissed Murphy's hernia complaint.  (Paper 95 at 4).  In a written opinion, Judge DiMauro cited Murphy's two prior state court cases, and noted that "[t]he instant case is one more claim against CMS for failure to provide Mr. Murphy with appropriate medical care.  Although it concerns his hernia, and not his eyes, it does allege negligent medical care by the same organization and some of the same doctors, during the same time period."  Id.  Judge DiMauro went on to hold that Murphy's hernia claim was barred by *res judicata*.

> The court agrees with CMS that Mr. Murphy could
> have and should have filed this claim within one

6

>of the earlier cases. "Res judicata, or claim preclusion, generally bars the litigation of a claim if there exists an earlier final judgment in which the parties, subject matter and causes of action are identical or substantially identical." State v. Carroll, 171 Vt. 395, 397 (2000) (internal quotation omitted). It "bars not only claims that were actually litigated in the previous action, but those that could have and should have been litigated." Id. at 397-98 (citations omitted).

Accordingly, the state court granted the defendant's motion on the pleadings and dismissed the case.

## Discussion

I. Summary Judgment Standard

Summary judgment should be granted only if, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Moller v. North Shore Univ. Hosp., 12 F.3d 13, 15 (2d Cir. 1993). A fact is material when it affects the outcome of the suit under governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute of fact is not genuine if there is insufficient evidence for a jury to find in the nonmoving party's favor. See id. at 252.

The moving party carries the burden of establishing that no genuine issue of fact exists.  See Celotex Corp., 477 U.S. at 323.  This burden will be met if the defendants "can point to an absence of evidence to support an essential element of the nonmoving party's claim."  Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995).  If the defendants meet this burden, the plaintiff must respond with a showing sufficient to establish the existence of that claim or element.  See Celotex Corp., 477 U.S. at 322-25.  "[M]ere speculation and conjecture is insufficient to preclude the granting of the motion."  Harlen Assocs. v. Incorporated Vill. of Mineola, 273 F.3d 494, 499 (2d Cir. 2001) (citing Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990)).  While the fact that the plaintiff is proceeding *pro se* requires the Court to read his filings "liberally and interpret them to raise the strongest arguments that they suggest," the application of this modified standard "does not relieve plaintiff of his duty to meet the requirements necessary" to either support his own motion or defeat that of the defendants.  Jorgensen v. Epic/Sony Records, 351 F.3d 46,

50 (2d Cir. 2003) (citation omitted).

II. *Res Judicata*

A federal court assessing the effect of a state court judgment looks to the law of the state in which the judgment was entered. See <u>Allen v. McCurry</u>, 449 U.S. 90, 99 (1980); <u>Leather v. Eyck</u>, 180 F.3d 420, 424 (2d Cir. 1999). Under Vermont law, "[r]es judicata bars litigation of a claim or defense if there exists a final judgment in former litigation in which the parties, subject matter, and causes of action are identical or substantially identical." <u>Lamb v. Geovjian</u>, 165 Vt. 375, 379-80 (1996) (internal quotations and citations omitted). *Res judicata*, also known as claim preclusion, bars parties from litigating claims that were raised in previous adjudicative proceedings as well as those that should have been raised in those proceedings. <u>Id.</u> at 380. The bar of *res judicata* applies when there has been a final judgment on the merits of a case. See <u>Wursthaus v. Cerrata</u>, 149 Vt. 54, 55 (1987) (citing <u>Miller v. Miller</u>, 123 Vt. 221, 224 (1962)).

The Vermont Supreme Court has explained that in addition to claim preclusion, res judicata "embraces" the

similar, although narrower, doctrine of issue preclusion (or collateral estoppel).  <u>In re Quechee Lakes Corp.</u>, 154 Vt. 543, 559 (1990) (quotations omitted).  Issue preclusion bars "the subsequent relitigation of an issue which was actually litigated and decided in a prior case between the parties resulting in a final judgment on the merits, where that issue was necessary to the resolution of the action."  <u>American Trucking Ass'ns v. Conway</u>, 152 Vt. 363, 369 (1989).  The elements of issue preclusion in Vermont are: (1) preclusion is asserted against one who was a party or in privity with a party in the earlier action; (2) the issue was resolved by a final judgment on the merits; (3) the issue is the same as the one raised in the later action; (4) there was a full and fair opportunity to litigate the issue in the earlier action; and (5) applying preclusion in the later action is fair.  <u>See</u> <u>Trepanier v. Getting Organized, Inc.</u>, 155 Vt. 259, 265 (1990).

In this case, some of the claims Murphy has asserted, namely his eye and hernia claims, have clearly been raised previously in state court.  Murphy's other medical claims, including his hand injury, inhaler and

blood monitoring claims, arose prior to his state court filings and thus could have been brought in those proceedings.  Furthermore, it appears from the parties' pleadings that CMS and its employees or agents have consistently been the defendants in these cases.

Additionally, at least the first two state court judgments against Murphy were "with prejudice."  (Paper 81, Ex. D; Paper 95 at 4).  Because these decisions were "with prejudice," they have "the effect of a final adjudication on the merits favorable to the defendant[s] and bar future suits brought by plaintiff upon the same cause of action."  See Nemaizer v. Baker, 793 F.2d 58, 60 (2d Cir. 1986).  "Such a dismissal constitutes a final judgment with the preclusive effect of 'res judicata not only as to all matters litigated and decided by it, but as to all relevant issues which could have been but were not raised and litigated in the suit.'"  Id. (quoting Heiser v. Woodruff, 327 U.S. 726, 735 (1946)); see also Littlefield v. Town of Colchester, 150 Vt. 249, 251 (1988) (dismissal with prejudice is treated as adjudication on merits).

Notwithstanding this body of law favoring the

11

application of *res judicata*, the Court must consider the peculiar facts of this case and Murphy's *pro se* status. Perhaps the most striking of these facts is that Murphy himself dismissed his state court cases before they were fully litigated. In fact, none of the state court cases ever proceeded much beyond the filing of the complaint. Murphy now asserts that he "did not know what he was doing and therefore made some mistakes on some of the cases." (Paper 84 at 1). Speaking specifically of his dismissals, Murphy states that he "moved to dismiss [sic] case because of [sic] same case pending in federal court. Case was then dismissed with prejudice. Plaintiff did not realize what he was doing." Id. Indeed, to the extent that Murphy made "mistakes" in his state court cases, those mistakes proved to be fatal to not only his state court claims, but potentially to future claims brought in any court or jurisdiction.

"Implicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." Traguth v. Zuck, 710 F.3d 90, 95 (2d

Cir. 1983). Courts in this Circuit have often been reluctant to "impose the drastic remedy of foreclosing a party from litigating an essential issue" when that party is *pro se*. Flaherty v. Lang, 199 F.3d 607, 616 (2d Cir. 1999) (citation and internal quotation omitted). For example, in Flaherty the Second Circuit declined to apply *res judicata* against the claims of a *pro se* plaintiff, holding that he had not had a full and fair opportunity to litigate the merits of a number of supplemental claims. Id. The court noted the plaintiff's apparent confusion as to how best to proceed with his claims, and ruled that the "muddled circumstances" resulting from that confusion weighed against imposing the drastic rule of *res judicata*. Id.[3]

Furthermore, *res judicata* is based upon the principle that parties who "have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties." See Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 401 (1981). Here, however, it can

---

[3] The Court has not found any Vermont case law requiring the strict application of *res judicata* against *pro se* litigants.

hardly be said that the parties "contested" Murphy's claims in full-blown litigation. Murphy dismissed his first state court action one month after it was commenced. His second case had a somewhat longer life, but was still dismissed on Murphy's motion a mere four months after filing.

Like the plaintiff in Flaherty, it appears that Murphy was confused as to how to best proceed with his claims. As a result, his complaint in the instant case was filed shortly after he filed his first state court complaint, and this case was pending for the duration of his second state court action. Murphy now implies in opposition to summary judgment that he moved to dismiss his state court claims with the expectation that his federal court case would proceed. (Paper 84 at 1).

Although Murphy has filed several lawsuits in state and federal court, he has never had an opportunity to fully litigate those claims. The fact that this denial of an opportunity to litigate is the result of Murphy's own actions should not, in light of his *pro se* status, condemn his claims forever. It appears that Murphy was uncertain as to which court he should approach with his

claims, and that he never intended his state court motions to dismiss to impact his federal court claims. Because Murphy is proceeding *pro se*, and because the parties have never actually litigated his claims of inadequate medical care, I recommend that the Court allow his claims to proceed, and that the defendants' motion for summary judgment be DENIED.

## Conclusion

For the reasons set forth above, I recommend that the defendants' motion for summary judgment (Paper 80) be DENIED.  Although the document entitled "Plaintiffs Motion for Summary Judgment" (Paper 84) is a response to the defendants' motion, I recommend that to the extent the filing is a motion and requires a ruling, the motion be DENIED.  Murphy's motion for a hearing on summary judgment (Paper 85) is DENIED.

Dated at Burlington, in the District of Vermont, this 21st day of July, 2005.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge


Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of

the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. Failure to file objections within the specified time waives the right to appeal the District Court's order. <u>See</u> Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).